**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

BOND SAFEGUARD INSURANCE
COMPANY; and LEXON INSURANCE
COMPANY,

　　　　　Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　Case No. 6:13-cv-561-Orl-37DAB

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

　　　　　Defendant.

_____

**ORDER**

This cause is before the Court on the following:

1. National Union's Dispositive Motion for Summary Judgment (Doc. 56), filed June 4, 2014;

2. Plaintiffs' Response in Opposition to Defendant's Dispositive Motion for Summary Judgment (Doc. 76), filed July 7, 2014;

3. National Union's Reply to Plaintiffs' Response in Opposition to Defendant's Dispositive Motion for Summary Judgment (Doc. 81), filed July 21, 2014;

4. National Union's *Daubert* Motion to Exclude Expert Testimony of John Frost (Doc. 62), filed June 4, 2014;

5. Plaintiffs' Response to Defendant's *Daubert* Motion to Exclude Expert Testimony of John Frost (Doc. 69), filed June 23, 2014; and

6. National Union's Reply to Plaintiffs' Response to *Daubert* Motion to Exclude Expert Testimony of John Frost (Doc. 79), filed July 11, 2014.

**BACKGROUND**

This action concerns whether Defendant National Union Fire Insurance Company of Pittsburgh, P.A.'s is obligated to satisfy a $40,410,729.03 stipulated judgment ("Judgment") that was entered in *Bond Safeguard Insurance Company v. Ward*, No. 6:11-cv-641-Orl-31DAB ("Underlying Action") against Defendant's insured, James Robert Ward ("Ward") and in favor of Plaintiffs Bond Safeguard Insurance Company and Lexon Insurance Company. (*See* Doc. 3; Doc. 44, ¶ 10; *see also* Doc. 3-5.) The Judgment resulted from a *Coblentz* settlement agreement whereby Ward assigned to Plaintiffs his rights to any claims against Defendant related to a Directors, Officers and Private Company Liability Insurance Policy Number 391-59-47 ("Policy") issued by Defendant to Ward's land development company, Land Resource, LLC ("LRC").[1] (Doc. 3; Doc. 44, ¶ 7; *see also* Doc. 56-3, pp. 4–6, 12; Doc. 57-13, pp. 14–27.) The parties dispute whether the Policy provides coverage for the Judgment and whether the *Coblentz* agreement was reasonable and entered without bad faith. (Docs. 56, 76, 81; *see also* Doc. 3 ¶ 28.) As explained below, the Court finds that the Policy does not afford coverage; thus, judgment is due to be entered in favor of Defendant.

**I.     The Policy**

The Policy obligates Defendant to provide coverage to Ward for the "Policy Period" of March 31, 2008 to March 31, 2009, as follows:

> This policy shall pay the **Loss** of each and every Director, Officer or Employee of the Company arising from a **Claim** first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this Policy for any actual or alleged **Wrongful Act** in their respective capacities as Directors, Officers or Employees of the Company . . . .

---

[1] LRC entered Chapter 7 bankruptcy, *In re Land Resource, LLC*, Bankr. No. 6:08-cv-10159-ABB (Bankr. M.D. Fla.) ("LRC Bankruptcy"). (*See* Doc. 57-16.)

(Doc. 3-2, p. 7 (emphasis added).) With respect to individual insureds like Ward, "Wrongful Act" means "any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or Employees of the Company." (*Id.* at 12.) A civil "proceeding for monetary or non-monetary relief which is commenced by . . . service of a complaint or similar pleading" is a "Claim" (*id.* at 8), and "Loss" includes "damages . . . judgments, settlements, pre- and post-judgment interest, and Defense Costs" (*id.* at 10). Defendant's coverage obligations under the Policy are obviated by Exclusion 4(h), which provides that Defendant "shall not be liable to make any payment for Loss in connection with a Claim made against an Insured . . . alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement" ("Exclusion 4(h)"). (*Id.* at 13.)

## II.    The Underlying Action

The Underlying Action arose from "the defaults of various bond principals on subdivision bonds ('Bonds')" that Plaintiffs began issuing on behalf of LRC in 2003 to guarantee completion of LRC's land development projects around the country, including in Georgia, Tennessee, and North Carolina. (Doc. 3-3, ¶¶ 6, 10, 26; Doc. 56-5, pp. 8, 13–36; Doc. 57-5, ¶ 10; *see also* Doc. 3, ¶ 10; Doc. 44, ¶ 10; Doc. 56-2, pp. 7–8, 14, 18, 22–24, 29, 50; Doc. 56-3, p. 13; Doc. 56-6; Docs. 58-1, 58-2 & 58-3 (providing copies of Bonds).) Plaintiffs required Ward and LRC to execute a General Agreement of Indemnity "as a prerequisite to the execution" of the Bonds. (Doc. 57-2 ("GAI"); *see also* Doc. 56-2, pp. 15, 29; Doc. 56-3, pp. 13–14; Doc. 57-10, pp. 3–4.) Pursuant to the GAI,

Ward and LRC were contractually obligated to indemnify Plaintiffs for any liability, cost, charge, or expense they may incur in relation to the Bonds. (*Id.*) The GAI also required Ward to: (1) provide Plaintiffs with access to his and LRC's books, records, and accounts; and (2) authorize third parties to provide Plaintiffs with any information, including information regarding the "status of work under contracts being performed" by LRC. (*Id.* at 4.)

The Bonds were contracts that imposed obligations on Plaintiffs and LRC. (Doc. 56-2, pp. 5, 21, 35; Doc. 56-3, pp. 30, 36; *see generally* Docs. 56-7–56-9.) Defaults on the Bonds resulted from LRC's breach of its obligations to complete land development projects for residential subdivisions in accordance with "applicable codes and other requirements." (Doc. 3, ¶¶ 9–10; *see* Doc. 3-3, ¶¶ 27, 34; Doc. 57-5, ¶¶ 10, 19–22, 36–41; *see also* Doc. 56-2, pp. 18–19, 23, 30–32, 35–36, 52–53 (explaining the performance guarantees and surety bonds related to infrastructure development projects undertaken by LRC and its related entities); Doc. 56-3, p. 17 (confirming LRC's failure to complete infrastructure development projects); Doc. 57-3.)

Plaintiffs suffered at least $40,410,729.03 in "losses and expenses as a result of settling" obligations under the defaulted Bonds, and they alleged that Ward was liable for such losses and expenses because he:[2] (1) caused LRC to default in the development projects by "negligent acts and omissions . . . (in his capacity as officer, director or representative of [LRC]);" and (2) induced Plaintiffs to issue the Bonds and forego certain suretyship remedies by negligently failing "to fully and accurately disclose" to Plaintiffs the financial condition of LRC. (Doc. 3, ¶¶ 11–12; Doc. 44, ¶ 13;

---

[2] Plaintiffs also named four other officers of LRC as defendants in the Underlying Action. (Doc. 57-5.)

Doc. 56-2, pp. 21–22; Docs. 58-1, 58-2 & 58-3; Doc. 59-3, Doc. 61-2, pp. 6–8, 14–22; *see also* Doc. 3-3.) In their initial complaint in the Underlying Action Plaintiffs also alleged that Ward was liable for the Bond losses and expenses based on Ward's contractual obligation to indemnify Plaintiffs pursuant to the GAI.[3] (Doc. 57-5, ¶¶ 13–18, 29, 42–43.) In their Second Amended Complaint, Plaintiffs omitted their indemnification claim and references to the GAI. (*See* Doc. 3, ¶ 13; Doc. 3-3; *see also* Doc. 56-2, pp. 51, 68.)

Ward demanded coverage from Defendant after receipt of the initial complaint and again after receipt of the Second Amended Complaint. (Doc. 3, ¶¶ 14, 23; Doc. 3-3, ¶ 38; Doc. 44, ¶ 14; Doc. 57-22.) In correspondence dated July 14, 2011 and January 22, 2013, Defendant denied Ward's demands for coverage "by virtue of" Exclusion 4(h) and Errors and Omissions Exclusion Endorsement #8. (Doc. 3-4; *see also* Doc. 3, ¶¶ 15, 24; Doc. 44, ¶¶ 15, 24; Doc. 57-6; Doc. 57-23.)

## III.   The *Coblentz* Agreement

Approximately sixteen months after Defendant's initial denial of coverage, Ward and Plaintiffs entered into the *Coblentz* agreement, which provided that: (1) Plaintiffs would file the Second Amended Complaint in the Underlying Action; (2) Ward would request defense and indemnification from Defendant based on the Second Amended Complaint; and (3) if Defendant denied coverage, then: (a) Plaintiffs and Ward would request entry of the Judgment, (b) Ward would assign to Plaintiffs any claims he had

---

[3] The Underlying Action was not Plaintiffs' first attempt to recover from Ward for his alleged breaches of the GAI. *See Bond Safeguard Ins. Co. v. Ward*, 484 F. App'x 400, 405–06 (11th Cir. 2012) (reversing summary judgment in favor of Bond due to questions of fact concerning Bond's satisfaction of a condition precedent to consult with Ward under the GAI); *see also Bond Safeguard Ins. Co. v. Ward*, No. 6:09-cv-1504-Orl-31GJK, 2011 WL 1790457 (M.D. Fla. May 10, 2011); *Bond Safeguard Ins. Co. v. Ward*, No. 6:09-cv-1504-Orl-31GJK, 2009 WL 4797822 (M.D. Fla. Dec. 8, 2009).

related to the Policy and Defendant's coverage denials, (c) Plaintiffs would not enforce the Judgment against Ward and would dismiss other actions that it had filed against Ward and persons and entities associated with Ward;[4] and (d) the LRC Bankruptcy trustee would receive ten percent of any recovery that Plaintiffs obtained from Defendant (Doc. 57-13, pp. 14–28; *see also* Doc. 3, ¶ 16; Doc. 56-2, pp. 47–49; Doc. 66-7). *See In re Land Resource LLC*, 505 B.R. 571, 574–75, 586–87 & n.3 (M.D. Fla. 2014) (affirming Bankruptcy Court's approval of settlement).

Plaintiffs filed their Second Amended Complaint (Doc. 57-21), National denied Ward's request for coverage (Doc. 57-23), and the Court entered the Judgment against Ward for $40,410,729.03 (Doc. 3-5). (*See* Doc. 3, ¶ 16; Doc. 44, ¶¶ 16, 25; Doc. 57-17.) The Judgment reflects the losses incurred by Plaintiffs as of November 5, 2012, due to LRC's defaults of its performance guarantees and Ward and LRC's breaches of the GAI. (Doc. 56-2, pp. 22–24, 33, 40, 71–72, 82.) Specifically, the Judgment reflects $4,942,562.00 in unpaid bond premiums, $3,171,785.65 in "loss adjustment expenses" and attorneys' fees, and $32,296,381.38 in actual payments on Bonds. (*Id.* at 72; *see also* Docs. 59-1; Doc. 59-4 & 59-5.)

## IV.    The Instant Action

As Ward's assignees, Plaintiffs initiated this action demanding damages from Defendant and declarations by the Court that: (1) the Policy provided full coverage to Ward for his claim concerning the Underlying Action; and (2) "the settlement resulting in entry of the [Judgment] was reasonable and in good faith." (Doc. 3 ¶ 28.) Pursuant to

---

[4] *See In re Land Resource LLC*, 505 B.R. 571, 573 (M.D. Fla. 2014) (describing additional actions pending against Ward, his family members, and the estate of Ward's deceased wife); *see also In re Land Resource LLC*, No. 6:08-bk-10159, 2011 WL 8193749, at *1 (Bankr. M.D. Fla. Nov. 30, 2011) (discussing the LRC Bankruptcy trustee's claims against Ward in sn adversary proceeding).

§ 627.428, Florida Statutes, Plaintiffs also demand their reasonable attorney fees and costs related to this action. (*Id.* ¶ 29.) Defendant filed an amended answer and asserted nineteen affirmative defenses, including that coverage is barred by Exclusion 4(h). (Doc. 44, pp. 5–6 (Fourth Defense); *see also id.* at 7 (Thirteenth Defense); *id.* at 8–9 (Seventeenth Defense).)

The parties filed motions for summary judgment (Docs. 56, 66) and *Daubert* motions challenging the admissibility of the opinions of the opposing parties' expert witnesses. (Docs. 62, 67.) The parties filed responses and replies (Doc. 68–69, 76–77, 79, 81–82), and the Court held a hearing on September 9, 2014. (Docs. 84–86.) At the hearing, the Court denied Plaintiffs' *Daubert* and summary judgment motions (Doc. 84), and the Court reserved ruling on Defendant's motions (Doc. 85, pp. 60–61), which are now ripe for adjudication.

## STANDARDS

### I.    Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), a party may file a motion "identifying [the] claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). To prevail, the movant must establish that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.*; *see Swaebe v. Fed. Ins. Co.*, 374 F. App'x 855, 856 (11th Cir. 2010). Assertions that a fact cannot be "genuinely disputed" must be supported by citations "to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

An adequately supported motion under Rule 56(a) shifts the burden "'to the non-moving party to show that specific facts exist that raise a genuine issue for trial.'"

*Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014) (quoting *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010)). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Flamingo S. Beach Condo. Ass'n, Inc. v. Selective Ins. Co. of SE*, 492 F. App'x 16, 26 (11th Cir. 2012) ("An issue is not genuine if it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative.") (internal quotation marks omitted). The Court must believe the "evidence of the non-movant" and must draw "all justifiable inferences" in the non-movant's favor. *Anderson*, 477 U.S. at 256; *see Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536, 1544 (11th Cir. 1991) (resolving appeal of summary judgment order by "construing the evidence in the light most favorable to the non-moving party").

## II.   Choice of Law

The parties in this action initially disputed whether the Court should apply Florida or Georgia law to determine whether Exclusion 4(h) precludes coverage for Ward's claims under the Policy. (Doc. 56, pp. 10–11, 19–20 (arguing Georgia law); Doc. 67, pp. 6–7 (arguing Florida law).) Subsequently, Plaintiff represented that the "Court need not conduct a choice of law analysis" because Florida and Georgia law are substantially similar. (Doc. 81, p. 1, n.1; *see also* Doc. 85, pp. 14–15.) Accordingly, the Court will apply Florida law.

In applying Florida law, the Court looks "first for case precedent from the Florida Supreme Court." *Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F. App'x 861, 864 (11th Cir. 2014) (internal quotation marks omitted). Absent such precedent, the Court is "bound to adhere to decisions of [Florida's] intermediate appellate courts" unless a

persuasive indication exists that the Florida Supreme Court "would decide the issue otherwise." *Id.* In insurance disputes like this one, the Court "may consider the case law of other jurisdictions that have examined similar policy provisions" if there are no "precedents from Florida's intermediate appellate courts" or the Florida Supreme Court. *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326, n.5 (11th Cir. 2005). Indeed, the Florida Supreme Court commonly consults such authority in resolving coverage disputes. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 535–39 (Fla. 2005) (discussing "how other states have interpreted the phrase 'arising out of' in the context of insurance contracts").

### III.   *Coblentz* **Agreements**

In *Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059, 1063 (5th Cir. 1969), the U.S. Court of Appeals for the Fifth Circuit held that, absent fraud or collusion, a liability insurer with notice of an action against its insured who declines to defend may be bound by a consent judgment entered in that action. *See Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014). Florida courts have adopted the reasoning of *Coblentz. See Perera v. U.S. Fidelity & Guar. Co.*, 35 So. 3d 893, 900 (Fla. 2010); *see also Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 489, 592 (Fla. 2d DCA 1984). Thus, under Florida law, Defendant will be bound by the Judgment if Plaintiffs establish that: (1) the Policy imposed a duty on Defendant to indemnify Ward for the Judgment; (2) Defendant wrongfully refused to defend Ward in the Underlying Action; and (3) the settlement was both reasonable and was made in good faith. *See Stephens*, 749 F.3d at 1322; *see also Mobley v. Capitol Specialty Ins.*, No. 13-20636-CIV, 2013 WL 3794058, at *2 (S.D. Fla. July 19, 2013); *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1324 (M.D. Fla. 2009)).

Although Plaintiffs must prove that the Policy covered Ward for Plaintiffs' claim against him in the Underlying Action, Defendant must prove that coverage is precluded by Exclusion 4(h). *See Burlington Ins. Co. v. Normandy Gen. Partners*, 560 F. App'x 844, 847 (11th Cir. 2014) (citing *U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983)). The coverage inquiry does not focus solely on the facts alleged in the pleadings in the Underlying Action. *See id.* Rather, coverage turns on the actual facts known at the time Ward and Plaintiffs made the *Coblentz* agreement.[5] *See Stephens*, 749 F.3d at 1324 (noting that the duty to indemnify is "determined by the underlying facts adduced at trial or developed through discovery during the litigation") (internal quotation marks omitted).

If the Policy provides coverage, then Plaintiffs must produce evidence "'sufficient to make a *prima facie* showing of reasonableness and lack of bad faith." *See Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1278–79 (S.D. Fla. 2008) (quoting *Steil*, 448 So. 2d at 592). To avoid enforcement of the *Coblentz* agreement, Defendant has the ultimate burden to prove "that either element [reasonableness or lack of bad faith] is unsatisfied." *Mid-Continent Cas. v. Am. Pride Bldg. Co.,* 534 F. App'x 926, 928 (11th Cir. 2013) (citing *Steil*, 448 So. 2d at 592).

## DISCUSSION

The threshold issue before the Court is whether the Policy provided coverage to Ward for the Judgment in the Underlying Action.[6] *See Bright House Networks, LLC v.*

---

[5] In contrast, an insurer's duty to defend "is determined solely by the claimant's complaint." *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 9–10 (Fla. 2004).

[6] Defendant does not argue that it is entitled to summary judgment on the duty to defend element (*see* Docs. 56, 81), even though the Policy only required Defendant to advance defense costs—not provide a defense to Ward (Doc. 77, p. 2; Doc. 3-2). If the Court assumes that Defendant's coverage denial was wrongful, then Defendant will be

*Pinellas Cnty.*, No. 8:14-cv-1237-T-33TBM, 2014 WL 4794786, at \*9 (M.D. Fla. Sept. 25, 2014). Defendant argues that coverage under the Policy is precluded by Exclusion 4(h) because the losses Plaintiffs recovered in the Underlying Action "arose out of LRC's and Ward's breaches of their contract obligations" under the GAI and the Bonds.[7] (Doc. 56, pp. 7, 10–19.) Plaintiffs counter that Defendant's arguments fail because they: (1) take construction of the Policy "to a tortured extreme, arguing that the mere utterance of the word 'bond' or 'contract' by Plaintiffs in this [action] sucks the claim into the protective ambit" of Exclusion 4(h); and (2) ignore "the legal legitimacy of Plaintiffs' tort claim which stands independently of any contractual liability." (Doc. 76, pp. 1–2, 9–14.)

The meaning of the Policy "is a question of law" to be resolved by the Court; however, the Court "may resort to construction" only if the Policy language "in its ordinary meaning is indefinite, ambiguous or equivocal." *U.S. Fire Ins. Co. v. Morejon*, 338 So. 2d 223, 225 (Fla. 3d DCA 1976); *see also Taurus Holdings*, 913 So. 2d at 532; *Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1085 (Fla. 2005). The Court must

_____

precluded from: (1) raising any defense that Ward should have raised in the Underlying Action; and (2) relying on any "no action clause" in the Policy. *See Gallagher v. Dupont*, 918 So. 2d 342, 347 (Fla. 5th DCA 2005); *Steil*, 448 So. 2d at 592 ("[T]he only effect of a wrongful refusal to defend would be to preclude the carrier from relying upon the 'no action' clause" of a policy"); *see also Sinni*, 676 F. Supp. 2d at 1324 ("[T]he mere entry of a consent judgment does not establish coverage and an insurer's unjustifiable failure to defend . . . [and it] does not estop the insurer from raising coverage issues"). Plaintiffs' burden of proving that the Policy provides coverage for their claim against Ward in the Underlying Action is unaltered by Defendant's wrongful refusal to defend Ward. *See LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997); *see also Morales v. Zenith Ins. Co.*, 714 F.3d 1220, 1228 (11th Cir. 2013); *Spencer v. Assurance Co. of Am.*, 39 F.3d 1146, 1149 (11th Cir. 1994).

[7] Defendant does not argue that Plaintiffs' tort claim against Ward fell outside the Policy's grant of coverage; rather, Defendant argues that Exclusion 4(h) bars coverage. (Doc. 56; *see also* Doc. 76, p. 5 (citing Doc. 66-3).)

read the Policy "'as a whole, endeavoring to give every provision its full meaning and operative effect.'" *See Morales*, 714 F.3d at 1227 (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007)). Ambiguity exists only if a provision is "susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage."[8] *Westport Ins. Corp. v. VN Hotel Group, LLC*, 513 F. App'x 927, 931 (11th Cir. 2013); *see also State Farm Mut. Auto Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986) (noting that strict construction against an insurer applies only "when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction"). Thus, the first step is to examine whether the Court must resort to construction of Exclusion 4(h). *See U.S. Fire Ins. Co.*, 338 So. 2d at 225.

Exclusion 4(h) provides that Defendant "shall not be liable to make any payment for Loss **in connection with** a Claim made against an Insured . . . **alleging, arising out of, based upon or attributable to** any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement." (Doc. 3-2, at 13 (emphasis added).) No Florida court has considered this precise language in the context of a D&O Policy; however, Florida courts have discussed the phrase "arising out of" and have held that the phrase is unambiguously broad—even when used in an exclusion clause. *See Am. Sur. & Cas. Co. v. Lake Jackson Pizza, Inc.*, 788 So. 2d 1096, 1099 (Fla. 1st DCA 2001) (holding that "the term 'arising out of' is not

---

[8] Ambiguous provisions must be strictly construed against an insurer "and in favor of coverage." *Morales*, 714 F.3d at 1227 (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). Further, "ambiguous 'exclusionary clauses are construed even more strictly against the insurer than coverage clauses.'" *Fayad*, 899 So. 2d at 1086 (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).

ambiguous"); *see also Taurus Holdings*, 91 So. 2d at 539–40 (holding that "'arising out

of your product' in the products-completed operations hazard exclusions at issue is

unambiguous"). Florida courts have broadly construed the phrase to preclude coverage

for claims "'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,'

'incident to,' or 'having connection with,'" a specified excluding circumstance. *See*

*Taurus Holdings*, 913 So. 2d at 533, 536; *see also Eastpointe Condo. I Ass'n, Inc. v.*

*Travelers Cas. & Sur. Co. of Am.*, 379 F. App'x 906, 908 (11th Cir. 2010) (applying

*Taurus Holdings* to broadly interpret policy provision that excluded coverage for claims

"arising out of" property damage); *MarineMax v. Nat'l Union Fire Ins. Co. of Pittsburgh,*

*P.A.*, No. 8:10-cv-1059-T-33AEP, 2013 WL 425832, at *8 (M.D. Fla. Feb. 4, 2013).[9] The

phrase "contemplates a more attenuated link than the phrase 'because of.'" *Garcia v.*

*Fed. Ins. Co.*, 969 So. 2d 288, 293 (Fla. 2007); *see also TransAmerica Ins. Co. v. Snell*,

627 So. 2d 1275, 1276 (Fla. 1st DCA 1993) (holding that "arising out of . . . is a much

more encompassing standard than mere causation").

Consistent with Florida case law, this Court finds that the phrase "arising out of"

as used in Exclusion 4(h) is unambiguously broad and precludes coverage for purported

tort claims that depend on "the existence of actual or alleged contractual liability" of an

insured "under any express contract or agreement." *See TransAmerica Ins. Co.,*

627 So. 2d at 1276 (reversing summary judgment for insured under errors and

---

[9] The Court disagrees with Plaintiffs that *MarineMax* supports their argument for coverage. The *MarineMax* court held that a contractual liability exclusion similar to Exclusion 4(h) would preclude coverage under a professional services policy for claims concerning loans made based on the insured's misrepresentations. *MarineMax*, 2013 WL 425832, at *8–*10 (holding that plaintiff's misrepresentation claims "arose of out liability" the insured "assumed in its contracts"). The *MarineMax* court did not apply the exclusion because an exception to the contract liability exclusion applied. *Id.* at *10. Here, the Policy does not provide an exception to Exclusion 4(h); thus, *MarineMax* does not support a finding of coverage in this action.

omissions policy because the "asserted loss [was] ultimately predicated" on an excluded insolvency even though a negligence claim was asserted); *Eastpointe Condo. I Ass'n*, 379 F. App'x at 908 (broadly applying property damage exclusion to preclude coverage for a breach of fiduciary duty claim that "depended on the existence" of property damage); *Am. Empire Surplus Lines Ins. Co. v. Chabad House of North Dade, Inc.*, 771 F. Supp. 2d 1336, 1340–41 (S.D. Fla. 2011) (applying contract exclusion despite tort allegations); *see also Taurus Holdings*, 913 So. 2d at 539–40 (holding that a product-completed exclusion precluded coverage for claims seeking health care and community protection costs resulting from conduct "arising out of (not merely incidentally related to) firearm products").

Courts in other jurisdictions that have examined policy provisions that are similar to Exclusion 4(h) have reached the same conclusion as this Court. For instance, in *GE HFS Holdings, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania*, a federal district court held that an exclusion identical to Exclusion 4(h) was "unambiguous" and precluded coverage under a D&O policy for a lender's negligent misrepresentations claims against the insured.[10] *See* 520 F. Supp. 2d 213, 217 (D. Mass. 2007). Similarly, the federal district court in *Federal Insurance Co. v. KDW Restructuring & Liquidation Services, LLC*, held that a breach of contract exclusion precluded coverage under a D&O policy for negligent misrepresentation and fraudulent inducement claims because the alleged "injuries undoubtedly flow from the contractual relationship between the parties." 889 F. Supp. 2d 694, 708

---

[10] The standard for ambiguity applied by the *GE HFS* court is similar to the Florida standard. *Compare GE HFS*, 520 F. Supp. 2d at 227, *with Westport Ins. Corp.*, 513 F. App'x at 931. Likewise, the *GE HFS* court's interpretation of "arising out of" is consistent with the interpretation applied by Florida courts. *Compare GE HFS*, 520 F. Supp. 2d at 229, n.11, *with TransAmerica*, 627 So. 2d at 1276.

14

(M.D. Pa. 2012); *see also Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.*, 591 F. Supp. 2d 651, 663 (S.D.N.Y. 2008) (holding that negligent misrepresentation and fraudulent inducement claims were not covered under D&O policy due to breach of contract exclusion because such tort claims "would not exist but for the express agreement" between the parties). Finally, the U.S. Court of Appeals for the Eighth Circuit also held that tort claims that "flowed from or had their origins in" breach of contract were not covered under a D&O policy with a breach of contract exclusion similar to Exclusion 4(h). *See Spirtas Co. v. Fed. Ins. Co.*, 521 F.3d 833, 835–36 (8th Cir. 2008). In this Court's view, the Florida Supreme Court would be persuaded by this authority. *See Taurus Holdings*, 913 So. 2d at 535–39; *see also Guideone*, 420 F.3d at 1326, n.5.

Here, Defendant has met its burden to cite record evidence establishing that Plaintiffs' purported negligent misrepresentation claim in the Underlying Action depended on (and was not merely incidental to) Ward's and LRC's contractual liability under the GAI, the Bonds, and various development agreements. For instance, Defendant points to Plaintiffs' concessions that their tort claim arose out of defaults on the Bonds, their losses arose from "contractual liability" of Ward under the GAI and LRC under the GAI and the Bonds, and they would have suffered no losses had Ward performed his obligations under the GAI. (Doc. 56, p. 5; *see also* Doc. 56-2, pp. 20, 23, 36, 71, 74–75; Doc. 57-7, pp. 4–6, 8–10; Doc. 57-8, pp. 11–13; Doc. 57-9, pp. 12–13.) The evidence concerning Plaintiffs' business dealings with Ward and LRC are consistent with these concessions as is Plaintiffs' Second Amended Complaint, which asserts that Ward's negligence commenced after 2003 and further provides that the Underlying Action arose from "the defaults of various bond principals" on the Bonds.

(Doc. 3-3, ¶¶ 6, 10, 26; Doc. 57-5, ¶ 10; *see also* Doc. 3, ¶ 10; Doc. 44, ¶ 10; Doc. 56-2, pp. 7–8, 14, 18, 22–24, 29, 36–37, 50; Doc. 56-3, p. 13.)

Plaintiff has not cited to specific colorable or probative evidence sufficient to establish a genuine issue for trial concerning the applicability of Exclusion 4(h).[11] (*See* Doc. 76, pp. 4, 6; Doc. 76-1.) For instance, Plaintiff's insistence that Exclusion 4(h) is inapplicable because "there never would have been contracts" were it not for Ward's negligent misrepresentations (*id.* at 2) finds no support in the cited deposition testimony and interrogatory responses concerning unspecified financial information provided to Plaintiffs at unspecified times. (*See* Doc. 56-2, pp. 15–16, 19; Doc. 61-2, p. 8.)

The Court also is not persuaded by Plaintiffs' argument that Florida's concurrent cause doctrine permits coverage here because an insured risk (negligent misrepresentations) is one of multiple causes of their loss. (Doc. 82 (discussing *Guideone*, 420 F.3d at 1330).) Plaintiffs' argument ignores that Florida courts will not apply the doctrine when the insured risk is "related and dependent" on an excluded risk and the insured risk does not pose a risk that is distinct from the excluded risk. *See Guideone*, 420 F.3d at 1330. Plaintiffs' omission is unsurprising given that application of

---

[11] Plaintiffs also have not cited case law that persuasively supports its argument that breach of contract exclusions do not preclude coverage for negligent misrepresentation claims that depend on or flow from contractual liability. (*See* Doc. 76, pp. 11–12; *see also* Doc. 82.) The bulk of Plaintiffs' cited cases do not directly quote the policy language at issue; thus, the cases are of little assistance to this Court. See *Taurus Holdings*, 913 So. 2d at 535 ("[I]n interpreting policies, the language is the key."). Further, *Guideone* is factually distinguishable. *See Guideone*, 420 F.3d at 1328. Here, the covered claim is connected to the excluded conduct in that the claim would not exist absent the pertinent contractual relationships. In contrast, the *Guideone* court determined that the covered conduct (non-sexual acts such as kidnapping, assault, battery, and robbery) caused damage to the claimants that was distinct from the excluded conduct (rape). *Id.* Indeed, the *Guideone* court determined that the covered and excluded conduct was sufficiently distinct to constitute multiple occurrences under the CGL policy at issue. *Id.* at 1331–32.

the concurrent cause doctrine is precluded under Plaintiffs' own theory that the contracts would not exist but for the negligent misrepresentations. *Id.* ("Causes are dependent when one peril instigates or sets in motion the other."). Thus, the Court finds as a matter of law that the concurrent cause doctrine does not apply, Exclusion 4(h) does apply, and summary judgment is due to be entered in favor of Defendant.[12]

Because Exclusion 4(h) precludes coverage, the Court need not consider whether Defendant has demonstrated that no genuine issue of fact exists concerning the final element of Plaintiffs' claim. *See Stephens*, 915 F. Supp. 2d at 1333 (declining to address reasonableness and bad faith after finding no coverage under insurance policy); *Sinni*, 676 F. Supp. 2d at 1332 (same). Nonetheless, the Court notes the plethora of evidence indicating that enforcement of the *Coblentz* agreement in this case would be contrary to Florida law. (*See generally* Doc. 67-1.)

When an insurer wrongly denies coverage and leaves it's insured to fend for itself in the face of a likely adverse money judgment, *Coblentz* permits the insured to take reasonable measures to protect itself that would otherwise be prohibited by the policy as inimical to the carrier's interest. *See Steil*, 448 So. 2d at 592; *see also infra* n. 6. What *Coblentz* does not do is authorize the insured to indiscriminately load the carrier's wagon with bricks of damage that no reasonable person would expect as consequences of the underlying claim. To discourage such conduct by insureds, Florida courts test the reasonableness of a *Coblentz* agreement by 'what a "prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim.'" *Wrangen*, 593 F. Supp. 2d at 1279 (quoting *Home Ins. Co. v. Advance Machine Co.*, 443 So. 2d

---

[12] Any of Plaintiffs' arguments not explicitly addressed in this Order have been considered by the Court and have been rejected.

165, 168 (Fla. 1st DCA. 1983)). Objective and subjective factors are considered, and

the reasonableness of the settlement is often established through expert testimony

concerning:[13]

> such matters as the extent of the defendant's liability, the reasonableness
> of the damages amount in comparison with compensatory awards in other
> cases, and the expense which have been required for the settling
> defendants to settle the suit. A determination of reasonableness of the
> settlement agreement is made in view of the degree of probability of the
> insured's success and the size of the possible recovery.

*Id.* (citation and internal quotation marks omitted). Bad faith does not require a showing

of fraud. *Steil*, 448 So. 2d at 592. Rather, it may be established by evidence of a "false

claim, or collusion in which the plaintiffs agree to share the recovery with the insured"

*Chomat v. N. Ins. Co. of N.Y.*, 919 So. 2d 535, 538 (Fla. 3d DCA 2006), or an absence

of any "effort to minimize liability." *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*,

534 F. App'x 926, 928 (11th Cir. 2013) (approving jury instruction concerning

reasonableness and bad faith); *Taylor v. Safeco Ins. Co.*, 361 So. 2d 743, 746

(Fla. 1st DCA 1978).

Here, the *Coblentz* agreement plainly afforded additional benefits to members of

Ward and his family beyond the mere conclusion of the Underlying Action. (Doc. 57-13,

pp. 14–27; Doc. 57-14; *see also* Doc. 56-3, p. 34; Doc. 56-10, p. 20 (noting Plaintiffs'

release of dismissed GAI claims against Ward); Doc. 57-15, pp. 7, 23; Doc. 57-16.)

Further, although some aspects of the settlement were subject to negotiation, neither

---

[13] The report of Plaintiffs' proposed expert witness addressed the factors
pertinent to a reasonableness determination in a very limited and conclusory way, and
he provided no opinion concerning bad faith. (*See* Doc. 59-7, p. 2.) He did not opine
that the Plaintiffs had a high probability of success in the Underlying Action or that their
negligence claim was sufficiently strong to justify payment of all damages demanded.
(*Id.*) Rather, he opined that Plaintiffs' claim was only "legally possible." (*Id.*) Although the
Court need not reach Defendant's *Daubert* challenge, the Court notes that the proffered
opinions provide scarce support to Plaintiffs.

Ward nor any other party endeavored to minimize the amount of the Judgment.[14] (Doc. 56-2, 81–82; Doc. 56-10, pp. 15, 18 (testifying that the amount of the Judgment was supplied by Plaintiff's counsel); Doc. 57-15, pp. 14–18, 22–27 (testifying that the amount was the "[l]oss to date"); Doc. 57-16, pp. 20–24, 31 (describing limited role of LRC Bankruptcy trustee with negotiation of *Coblentz* agreement); *see also* Doc. 59-6, p. 2.) This is so even though Ward had viable defenses in the Underlying Action, and Plaintiffs had previously offered to settle with Ward and had actually settled with other defendants in the Underlying Action for a fraction of the Judgment. (*See* Doc. 56-2, pp. 25–26 (testifying that Plaintiffs offered to settle with Ward for $5,000,000.00); Doc. 57-15, p. 6 (same); Doc. 56-10, pp. 6–7, 16 (confirming $37,500.00 settlements with two defendants and dismissal of two others); *see also* Docs. 57-20, 57-19.) On this record, the conclusion that the *Coblentz* agreement was reached by collusion or an absence of effort to minimize liability is compelling. Accordingly, even if the Policy provided coverage to Ward for the Underlying Action—and it does not—entry of judgment for Defendant would likely still be warranted.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.    National Union's Dispositive Motion for Summary Judgment (Doc. 56) is **GRANTED**.

2.    Defendant National Union's *Daubert* Motion to Exclude Expert Testimony of John Frost (Doc. 62) is **DENIED AS MOOT**.

---

[14] Ward testified that he did not know what damages were included in the Judgment, he had no recollection of negotiations related to the Judgment amount, and he didn't "have any money left anyway." (*See* Doc. 56-3, pp. 27–32.)

3.      The Clerk is **DIRECTED** to enter judgment in favor of Defendant and

against Plaintiffs and to **CLOSE** this file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 20, 2014.


_____
ROY B. DALTON JR.
United States District Judge




Copies:

Counsel of Record